Gary SHAMLEY, Appellant,

v.

ITT CORPORATION, James J. Cox, George L. Klaus, Russell G. Tisman, Appellees.

No. 238, Docket 88–7427.

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 1988.

Decided March 1, 1989.

---

J. Owen Zurhellen, III, New York City, for appellant.

Claude M. Tusk, Solin & Breindel P.C., New York City, for appellees.

Before OAKES, Chief Judge and KAUFMAN and NEWMAN, Circuit Judges.

OAKES, Chief Judge:

This case concerns two issues: whether a partial final judgment under Fed.R.Civ.P. 54(b) may be entered in order to permit a defendant to assert res judicata as a bar to a duplicative state court action; and whether the conflict of laws rules of New Jersey would apply the law of New Jersey or the law of New York when the plaintiff, a New Jersey domiciliary, sues his New York employer for matters related to his employment. The United States District Court for the Southern District of New York, John F. Keenan, Judge, dismissed certain state law claims asserted by Gary Shamley, one of the ITT Corporation's former employees. These state law claims were for wrongful discharge, defamation of character, and intentional infliction of emotional distress. Judge Keenan held that New York law was applicable and that under this law these claims were meritless. When Shamley brought a state court claim in New Jersey reasserting the same claims—though restyling the defamation claim as "malicious interference with advantageous employment relationship and inducement of breach of contract"—ITT sought an order under Fed.R.Civ.P. 54(b) for entry of a partial final judgment on the claims dismissed by Judge Keenan so that it could assert res judicata as a bar in the New

Jersey action. The same district court, Michael B. Mukasey, Judge, granted this motion, stating "because I believe potentially vexatious litigation in New Jersey is sufficient reason under Rule 54, Fed.R.Civ.P., for entry of immediate judgment, defendant's motion is granted." Shamley claims that this reasoning was insufficient. He also asserts that the state law claims should not have been dismissed in the first place because New Jersey rather than New York law should have been applied. We affirm.

This case has a somewhat tortuous procedural history. Indeed, the action began in 1984 against ITT and several of its employees in the United States District Court for the District of New Jersey. Shamley, a cost accountant who was employed for fourteen years by ITT, alleged that he was discriminated against on the basis of his age (fifty-eight), his religion (Jewish), and his ethnic origin (Bulgarian-born Hispanic former resident of Israel). He made federal civil rights claims for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981, after filing charges with the Equal Employment Opportunity Commission ("EEOC") and obtaining a right-to-sue letter; for conspiracy to deprive him of his civil rights and equal privileges under the Civil Rights Law of 1871, 42 U.S.C. § 1985(3); for conspiracy under 42 U.S.C. § 1985(2) to punish him for previously suing in New York state court for defamation and intentional infliction of emotional distress; for wrongful discharge from employment motivated by bad faith and malice contrary to 42 U.S.C. § 1981 and 42 U.S.C. § 1985(2); and for discriminatory discharge and retaliatory acts under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., again after charges were filed with the EEOC. He also asserted claims for wrongful discharge and defamation and intentional infliction of emotional distress under the common law of New Jersey.

ITT moved for a change of venue in the New Jersey action. The New Jersey federal court transferred the case to the Southern District of New York (where it was consolidated with an age-discrimination action previously brought by Shamley in the Southern District) because, according to the New Jersey district court, "this suit has a far more substantial connection with the Southern District of New York than with the District of New Jersey." The transfer was appealed, but that appeal has been withdrawn.

In May 1985, ITT moved for summary judgment on all of Shamley's claims in the consolidated actions, and Judge Keenan, by memorandum opinion and order dated April 9, 1987, applied New York law and dismissed the state law claims for wrongful discharge, defamation, and intentional infliction of emotional distress, but entered no final judgment because Shamley's federal claims remained alive.[1]

After Judge Keenan's order, Shamley began another action in the Superior Court of New Jersey for Bergen County asserting substantially the same claims against the same defendants, though the claim for defamation appeared in a different guise. On or about February 26, 1988, ITT moved to dismiss the New Jersey state court complaint, claiming that it was barred by the doctrine of res judicata in light of Judge Keenan's order. Because no judgment had been entered by the federal district court in New York, ITT sought a partial final judgment from Judge Mukasey, to whose docket the case had been transferred. This request, as we have said, was granted by Judge Mukasey on April 21, 1988. Thereafter the Superior Court of New Jersey granted ITT's motion to dismiss Shamley's complaint in the New Jersey action with prejudice based on New Jersey's "entire controversy doctrine," which mandates that

---

1. We note parenthetically that Shamley's original action filed in 1983 in New York Supreme Court alleging defamation, wrongful discharge, and intentional infliction of emotional distress was dismissed for failure to meet proper pleading requirements, and leave to amend his complaint was denied in an order affirmed by the Appellate Division; leave to appeal to the New York Court of Appeals was also denied.

all related claims be heard in the same forum. Since the instant appeal was argued, New Jersey's Appellate Division has affirmed the Superior Court on res judicata grounds. *Shamley v. ITT Corp.*, No. A–4728–87T1, slip op. at 3 (N.J.Super.Ct.App. Div. Dec. 27, 1988).

Shamley's present appeal is from Judge Mukasey's entry of partial final judgment on Judge Keenan's order dismissing the state law claims. He disputes both Judge Mukasey's decision and Judge Keenan's dismissal of those claims. Shamley declined to follow Judge Mukasey's suggestion that with ITT's permission he delay perfection of his appeal until the district court decides all of his federal claims.

## DISCUSSION

### A. *Partial Final Judgment*

 The first question is whether Rule 54(b) authorizes entry of partial final judgment in order to create res judicata effects elsewhere.[2] The ordinary purpose of Rule 54(b) is to permit the party aggrieved by a partial determination to appeal immediately. *See generally Cullen v. Margiotta*, 811 F.2d 698, 710–13 (2d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Weiss v. York Hosp.*, 745 F.2d 786, 801–04 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Shamley argues that Judge Mukasey granted a partial final judgment not to permit such an appeal but solely to bestow res judicata effect on the dismissal of Shamley's state law claims. The most apposite authority is *Continental Airlines v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir.1987), which held that an otherwise proper 54(b) certification may be awarded "for the pur-

pose of producing res judicata effects elsewhere," following dicta in *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 950 n. 7 (7th Cir.1980), and *Republic of China v. American Express Co.*, 190 F.2d 334, 339 (2d Cir.1951) (Frank, J.). *Continental Airlines* held that "an otherwise permissible 54(b) certification designed to produce res judicata effects in another forum was proper." 819 F.2d at 1525. This circuit's *Republic of China* did not go so far as to approve the entry of a partial final judgment for the purpose of creating res judicata effects. Judge Frank did mention that the trial judge "intended ... that his [partial] discharge order would be available to the Express Co. by way of *res judicata*," but only in saying that the lower court probably intended the partial discharge as final, though the court had failed to enter a partial final judgment. 190 F.2d at 339. Nevertheless, we find the Ninth Circuit's reasoning persuasive. There is no justification for limiting the issues that a district court can consider in entering a partial final judgment, nor is it realistic to ask a district court to approach the decision while blinding itself to one of the decision's most important effects. *See Continental*, 819 F.2d at 1525.

Given that the res judicata purpose did not prevent Judge Mukasey from entering his partial order, the question remains whether the order was properly entered under Rule 54(b). *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980), reminds us that the district court should be mindful of judicial economy and, in general, refuse to grant a partial final judgment when an appellate court would have to decide the same issues on separate appeals. We also note that some circuits use a more

---

2. Fed.R.Civ.P. 54(b) provides:

 Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express di-

rection for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

rigid test based not just on overlapping issues but on overlapping facts, namely, that "while claims with some factual overlap may still be separate for the purposes of Rule 54(b), 'claims are not separate for Rule 54(b) purposes if the facts they depend on are largely the same.'" *ODC Communications Corp. v. Wenruth Invs.*, 826 F.2d 509, 512 (7th Cir.1987) (quoting *Minority Police Officers Ass'n v. City of South Bend*, 721 F.2d 197, 201 (7th Cir. 1983)).

We think that these tests are met here, since this appeal does not require us to decide the same issues or review largely the same facts that will be before us on Shamley's federal claims of religious discrimination, ethnic discrimination, and age discrimination. Those claims span Shamley's entire fourteen-year employment history, which allegedly included being passed over for promotion twelve times in favor of Christian, native-born, younger Americans. By contrast, because Shamley's state law claims were dismissed for purely legal reasons, the only facts relevant to this appeal are the procedural history of the case and Shamley's discovery of some allegedly defamatory material in his personnel file. *See infra* Section C. Because Shamley's two appeals address different issues and largely different facts, the Rule 54(b) certification in this case does not promote piecemeal appeals. Rather, it has helped prevent duplicative litigation, as New Jersey's Appellate Division recently ruled against Shamley on res judicata grounds in respect to the wrongful discharge and emotional distress/interference with advantageous relations claims. *Shamley v. ITT Corp., supra.*

## B. *Conflict of Laws*

■ Judge Keenan dismissed the claims in tort for wrongful discharge and intentional infliction of emotional distress because he decided to apply New York substantive law: Although New Jersey recognizes a cause of action for wrongful discharge of an at-will employee, *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980), New York does not, *Murphy v. American Home Prods. Corp.*,

58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). The judge resolved the choice of law issue using New Jersey's choice of law principles, following *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), and *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). He noted that New Jersey follows the governmental interest analysis, looking to the "jurisdiction having the most significant relationship and closest contacts with the occurrence and the parties" and hence the strongest interest in the outcome of the litigation. *Rose v. Port of New York Auth.*, 61 N.J. 129, 140, 293 A.2d 371, 376–77 (1972).

Following this analysis, Judge Keenan held that New York had the stronger interest in and more significant contact with the litigation in that Shamley, though a resident of New Jersey, chose to work for ITT in New York during his entire career. In addition, it was in New York that Shamley was discharged, that his administrative claims were processed, and that ITT had its headquarters. Judge Keenan also noted New York's interest in preserving the expectations of parties to an at-will employment contract, especially where a citizen of New Jersey had voluntarily sought employment outside of his own state. Finally, he said that employees may not circumvent the at-will contract rule of New York by casting their claims in terms of intentional infliction of emotional distress. *See Murphy*, 58 N.Y.2d at 303, 448 N.E.2d at 90, 461 N.Y.S.2d at 236.

Shamley argues that Judge Keenan's analysis was faulty in that New Jersey would have decided to follow New Jersey law. He cites *Warner v. Auberge Gray Rocks Inn, Ltee.*, 827 F.2d 938 (3d Cir. 1987), where the longer New Jersey statute of limitations was applied to a suit by a New Jersey plaintiff against a Canadian ski resort for an accident that occurred in Quebec; *Dent v. Cunningham*, 786 F.2d 173 (3d Cir.1986), where the longer New Jersey statute of limitations was applied to a suit by a New Jersey plaintiff against General Motors, which sold cars and had a

plant in New Jersey, for an accident that occurred in California; and *Schum v. Bailey*, 578 F.2d 493 (3d Cir.1978), doing the same for a New Jersey plaintiff who sued a doctor who practiced in both New York and New Jersey for malpractice that occurred in New York.[3] *Warner, Dent,* and *Schum* are all distinguishable in the sense that while the plaintiffs in each case left New Jersey temporarily on a trip, Shamley left New Jersey every workday for fourteen years, forging a lasting link between himself and the state of New York. Moreover, New York has an unusually strong interest in applying its own law to employment contracts involving work in New York State. Because workers who reside in several states work side by side in New York State, New York has a very practical reason for maintaining a uniform approach to employer/employee relations. New Jersey's Appellate Division recognized this when it held against Shamley on these same claims, saying that New York law governed because "ITT's relationship with its employees in its New York office should not be subject to different legal principles depending on the state of the employee's domicile." *Shamley v. ITT Corp., supra,* slip op. at 3. We agree with the Appellate Division: Under New Jersey choice of law principles, New York law applies to this employer/employee case.[4]

## C. *The Merits*

■ Because New York law governs here, the district court correctly dismissed the emotional distress and abusive discharge claims under *Murphy v. American Home Products Corp., supra.* Judge Keenan was also correct to dismiss the defamation claim, for two reasons. First, the judge based his decision on New York's one-year statute of limitations, N.Y.Civ. Prac. L. & R. 215 (McKinney 1972), because Shamley claimed that defamatory memoranda were placed in his personnel file from September 7, 1971, to January 7, 1983. A cause of action for defamation accrues when the material is published, *Fleischer v. Institute for Research in Hypnosis,* 57 A.D.2d 535, 394 N.Y.S.2d 1 (1st Dep't 1977), and this publication occurred over one year before Shamley's complaint was filed in federal court. True, Shamley claimed that these memoranda were concealed from him, and it is not altogether clear under New York case law whether concealment can estop a defamation defendant from raising the statute of limitations as a defense.[5] Nonetheless, Judge Keenan found that Shamley's allegations of concealment were too conclusory, and we agree. Shamley's complaint merely states that the memoranda were "surreptitiously" placed in his file. It was not until this appeal that Shamley alleged that official ITT policy prohibited employees from seeing their personnel files: a practice that might conceivably amount to concealment, though it would also serve the employer in other, more obvious ways.

Because Shamley did not properly allege concealment, the New York statute of limitations required him to file suit within one year of the publication of the allegedly defamatory material. N.Y.Civ.Prac. L. & R. 215.[6] This publication occurred, Sham-

**3.** New Jersey's conflict of laws methodology is criticized in Klein, *A Critical Analysis of New Jersey's Domicile-Driven Choice of Law Methodology,* 17 Seton Hall L.Rev. 204 (1987).

**4.** The Appellate Division decision has undermined the force of *Robinson v. Sizes Unlimited,* 685 F.Supp. 442, 447–48 (D.N.J.1988), which determined that New Jersey law applied in similar circumstances.

**5.** *Compare Five Platters, Inc. v. Williams,* 81 A.D.2d 534, 438 N.Y.S.2d 107 (1st Dep't 1981) (concealment does not create estoppel unless person defamed relied on misrepresentation); McLaughlin, *Commentary on Section 201,* 7B

McKinney's Consolidated Laws of New York Annotated: Civil Practice Law and Rules 59–60 (1972) (in tort actions generally, concealment does not create estoppel unless the concealment is fraudulent) *with Memory's Garden, Inc. v. D'Amico,* 84 A.D.2d 892, 445 N.Y.S.2d 45 (3d Dep't 1981) (implying that affirmative concealment might toll statute).

**6.** The New York statute of limitations applies under the governmental interest test that the New Jersey courts would use to decide this question. *Pine v. Eli Lilly & Co.,* 201 N.J.Super. 186, 492 A.2d 1079 (App.Div.1985) (discussing *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 140–41, 305 A.2d 412, 418 (1973)).

ley says, through January 1983; yet Shamley did not file in New Jersey federal district court until September 1984. Shamley argues that we should use New Jersey's saving statute, N.J.Stat.Ann. § 2A:14–28 (West 1987). He says that this statute would preserve his cause of action beyond the time allotted by the statute of limitations because he pursued this matter in a New York state court until August 1984. But, as Judge Keenan recognized, this case is governed by New York's saving statute, N.Y.Civ.Prac. L. & R. 205 (McKinney Supp. 1988), just as it is governed by the New York statute of limitations, *see supra* note 5. We think that the New York saving statute would not be called into operation where the first action—the suit in New York state court—occurs in a different state from the second action—the suit in New Jersey federal court. *Cf.* McLaughlin, *Commentary on Section 205*, 7B McKinney's Consolidated Laws of New York Annotated: Civil Practice and Rules 195 (1972) (saving statute operates to permit second action in New York courts only if first action was brought in state or federal court in New York). The saving statute therefore cannot be used to stretch the statute of limitations, and Shamley's defamation claim is time-barred.

Shamley's defamation claim is also inadequate for a second reason. Evaluations of employees made by their superiors enjoy a qualified privilege in defamation actions. *Mock v. LaGuardia Hosp.–Hip Hosp., Inc.*, 117 A.D.2d 721, 498 N.Y.S.2d 446 (2d Dep't 1986) (allegedly defamatory comments made to other employees and to participants at NLRB hearing); *Kasachkoff v. City of New York*, 107 A.D.2d 130, 134–36, 485 N.Y.S.2d 992, 995–96 (1st Dep't 1985) (allegedly defamatory comments made in small, confidential meeting), *aff'd,* 68 N.Y.2d 654, 496 N.E.2d 226, 505 N.Y.S. 2d 67 (1986); *Berger v. Gilbert*, 65 A.D.2d 882, 410 N.Y.S.2d 427 (3d Dep't 1978) (allegedly defamatory written evaluations), *appeal denied,* 47 N.Y.2d 709, 392 N.E.2d 1259, 419 N.Y.S.2d 1025 (1979). In order to overcome this privilege, employee-plaintiffs must allege malice on the part of their superiors, and these allegations must be supported by sufficient evidentiary facts. *Kasachkoff, supra; Berger, supra.* Although Shamley did describe his superiors' behavior as "malicious," neither his complaint nor his supporting documents allege facts which support this assertion. Thus, Shamley's complaint insufficiently alleges both concealment and malice, and summary judgment was appropriate.

JUDGMENT AFFIRMED.